17217 Yellowstone Dr
Eagle River, AK
99577



UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LORA H. REINBOLD, )
)
Plaintiff )  Case No. 3:23-CV-00087 JMK
)
V. )
)
ALASKA AIRLINES, KYLE LEVINE, )
KIM HUTCHINSON, JEREMY HORN )
DIANE BIRKETT RAKOW, MARILYN )
ROMANA, ROY MICHAEL WUYTS )
SMITH, AMBER LNU,  ALISON LNU, )
AMANDA  LNU, JOHN LNU, KRISTEN )
LNU,  BRENDA LNU, DORTHY LNU )
M.FRIAS )
Defendants. )
_____ )

## COMPLAINT

Jurisdiction: This Court has subject matter jurisdiction over this case pursuant

to the federal question jurisdiction, Under Article III, 28 U.S.C. 1331, and the district

courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.

Venue in this case is appropriate under 28 USC 81A, and should be held in

Anchorage, because the Plaintiff and many of the Defendants are believed to work

and reside within fairly close proximity to the City of Anchorage.

## PARTIES

Plaintiff Lora H. Reinbold, is a permanent resident of Eagle River, Alaska.

1

Defendant, Alaska Airlines, is believed to be a major corporation with offices in several different states, but who occupies and maintains a location within several airports in Alaska.

Defendant Kyle Levine, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Washington.

Defendant Kim Hutchinson, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Alaska.

Defendant Jeremy Horn, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Washington.

Defendant Diane Birkett Rakow, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Washington.

Defendant Marilyn Romano, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Alaska.

Defendant Troy Michael Wuyts-Smith, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Alaska

Defendant Amber LNU, is believed to be an employee of Alaska Airlines and a believed to be resident of the State of Alaska. The last name is currently

.

2

unknown, but whose name is believed to be known to the other defendants, and whose last name will be substituted as soon as it becomes known to the Plaintiff.

Defendant M. Frias is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Washington.

Defendant Alison Reineccius, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Alaska.

Defendant John LNU, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Oregon. The last name is currently unknown, but whose name is believed to be known to the other defendants, and whose last name will be substituted as soon as it becomes known to the Plaintiff.

Defendant Kristen LNU, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Oregon. whose last name is currently unknown, but whose name is believed to be known to the other defendants, and whose last name will be substituted as soon as it becomes known to the Plaintiff.

Defendant Brenda LNU, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Oregon. The last name is currently unknown, but whose name is believed to be known to the other defendants, and whose last name will be substituted as soon as it becomes known to the Plaintiff.

3

Defendant Dorothy LNU, is believed to be an employee of Alaska Airlines and believed to be a resident of the State of Oregon. The last name is currently unknown, but whose name is believed to be known to the other defendants, and whose last name will be substituted in as soon as it becomes known to the Plaintiff.

## I. INTRODUCTION AND BACKGROUND FACTS

On January 29, 2021 the Center for Disease Control (CDC) issued an Order requiring masks to be worn on public transportation conveyances and at transportation hubs.[1] The order included an exemption for those persons that had a disability that made it unsafe for them to wear a mask.[2] The CDC's order takes precedence over any airline policy that may have been in place prior to the president's executive action.[3] On February 5, the DOT's Office of Aviation Consumer Protection finally informed airlines that they must grant face mask exceptions to qualified disabled people, giving carriers 45 days of immunity from enforcement action to develop necessary procedures. On its travel advisories webpage, Alaska Airlines stated that "federal law requires guests to wear a mask over their nose and mouth at all times during travel, including throughout the flight, during boarding and deplaning, and while traveling through an airport." The

---

[1] 86 FR 8025 - Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs was published in the Federal Register Volume 86, Issue 21 (February 3, 2021).

[2] The exemption stated as follows: "The following persons with disabilities might be exempt from CDC's requirement to wear a mask based on factors specific to the person: A person with a disability who cannot wear a mask because it would cause the person to be unable to breathe or have respiratory distress if a mask were worn over the mouth and nose."

[3] Jo Biden's Executive order 13997, January 21, 2021.

4

airline makes no mention of an exception for disabled passengers. Because the DOT's 45 day pause on enforcement action ended on March 22, 2021, it was expected Alaska Airlines, and other airlines, would have published a clear policy on face mask exceptions by that date, and made the published policy available to their passengers.

Lora H. Reinbold, the above-named plaintiff in this case, who was an elected Alaska State Senator at the time, and who served on several Senate Committees and was Vice Chair of State Affairs and Legislative Council, inquired again on April 22, 2021, as she came to board the plane, whether Alaska Airlines provided accommodations for those persons whose doctors had provided written notice of a CDC mask exemption, that prevented them from safely being able to wear a mask. The Alaska Airlines check in agent begrudgingly looked up policy, in the system for it was not publicly available. The check in agent stated had to have a PCR within 72 hours. Senator Reinbold noted she had had a negative PCR test approximately 4 days earlier. The gate agent told her, the CDC mask exemption from her doctor had to be reviewed along with her medical records by the Alaska Airlines medical doctor to approve an exemption on Alaska Airlines. When Lora Reinbold explained to the Alaska Airlines check in agent that it would violate the Federal HIPAA law[4] for Alaska Airlines to require Lora Reinbold to surrender her

---

[4] The Health Insurance Portability and Accountability Act of 1996 (HIPAA).

own medical records to the Alaska Airlines doctor, before they would grant her the exemption, a few other check in agents began insisting that she wear the blue cloth mask, instead of her face shield recommended for her disability by her doctor.[5] She was required to wear the blue paper mask.

On November 15, 2020 On a flight from Dallas to Portland flight AS 655 (seat 16 c) there was a woman sitting behind Lora Reinbold, and to the right of her, that complained to Lora Reinbold that her mask was down too long when she was eating.

As Lora Reinbold was boarding the next flight, AS # 183 from Portland to Anchorage (seat 17 c) she was met by gate officials as she tried to board the flight. Apparently, there had been a complaint by the lady that sat behind her, that she kept her mask down too long during eating. They were there to inspect her double-layered fish print cloth mask. Soon another gate official came up, and they concluded that her mask was over her nose and mouth, which is all that is required in the CDC Mandate, but it did not cover her chin so they told her that she would have to wear a second mask. They said one would be brought to her on the plane. Soon after she got on the plane, there were 4 Alaska Airline employees towering over her, looking down on her, and made her feel very intimidated. They told her that she must wear two masks. Lora Reinbold explained to them that she had

---

[5] This violated Lora Reinbold's civil rights under Hipaa, under ADA, and under the DOT statute that mandates the airlines to comply with the statutes by March 22, 2021.

6

medical condition and was concerned the double mask requirement was of serious concern and had concerns being able to safely and comfortably wear one mask, let alone two the entire flight, that the masks could cause far more harm than good, and she feared with two masks on she would not be able to breathe safely. The four employees told her she had to comply.

Lora Reinbold interviewed John a Flight Attendant on a recording, with his permission, describing the difficulties. This was a tough flight for her, but she complied with the requirement that she wear the two masks, until she could no longer safely breathe, and had to take her fish print cloth mask off and wore just the blue paper one they gave her, because she was struggling trying to breathe with two masks.[6]

On November 30, 2020 Lora Reinbold received a text from a flight attendant that asked her if she was flying to Hawaii the next day Dec 1, 2020, and asked her to give her a call. During the phone call the flight attendant said that Lora Reinbold was being watched/targeted and that there would be supervisors in yellow vests watching for her as she entered the terminal, and in the check in area, to ensure she was wearing a mask. She said a flight attendant had overheard another flight attendant in the jetway say that she dreaded being on the flight to Hawaii tomorrow

---

[6] Confirmation number YEQWWB ticket number 027216874231.

(December 1st) because she knew that Lora Reinbold was going to be on it and she thought there may be trouble/issues.

On December 1, 2020 As Lora Reinbold walked into the terminal there were two supervisors in yellow vests with an eye on her. At the gate area, and on the plane, she was observed; Kari, she believes was a strict uptight flight attendant watching her. Justin is believed to be the lead in the airport. Misty and Justin she believes were the two watching her in the arrival/check in area. But she arrived in Hawaii with no major issues; no serious or final mask compliance warnings were given and clearly no yellow card. At some point or another they may have been asked to put masks up higher on their noses.[7]

April 23, 2021 Senator Lora Reinbold received a letter from Alaska Airlines that she had been banned. Her flight was removed from her app. It was an unanticipated surprise, because she had to urgently figure out how to get to Juneau by the following Monday when HB76 was on the Senate floor-it was Gov Dunleavy's disaster declaration extension bill that she passionately disagreed with.

She contacted an Alaska Airlines board member, Ken Thompson, to try to work things out behind the scenes April 23 and 24th without success. She stated it would be to the benefit of both Alaska Air and herself to not go public. She was then

---

[7] Confirmation code SARXAT.

8

instructed to only work through Jeremy Ross, but she believes it could be a Jeremy Horn, who was head of security. She knows the VP Debbie Birkett Rakow who is senior VP of Government Affairs and had been communicating with an employee named Jeremy.

Stories started being released publicly and Alaska Airlines made public statements, without permission using Lora Reinbold's name publicly. The mask ordeal Alaska Airlines created with Lora Reinbold, started causing intense humiliation on level she had never nor ever expected to experience on a local, state, national and international level. She tried to diffuse the situation and stay composed and respectful even under intense scrutiny. On or about April 24, 2021 Ken said via text, Reinbold was only to communicate with Jeremy Ross. She pleaded for help from Ken, unsuccessfully, and tried to emphasize that the ambush of the broad negative media, without even a hearing or a phone call from the airlines was completely unfair, damaging and unacceptable to her. To this day to the best of her recollection, she has not received a phone call to discuss the matter from Alaska Airlines. However, Senator Peter Micciche got a phone call from Alaska Airlines, and they told him Senator Reinbold had been banned. Micciche later told Reinbold he told Alaska Airlines to make sure they had a good reason. He was telling at least one other Senator, Senator Kawasaki that night, that Lora's life was going to get difficult. But Peter did not call Senator Lora Reinbold to tell her.

9

April 24-25, 2021 she drove feverishly the 750 miles to Juneau and luckily was able to catch the four to five hour ferry to Juneau. There were challenges at the Canadian border due to intense negative media attention. When en route to Juneau and was in Tok, Jerry Anderson with Ethics called and informed her that she was under investigation by the ethics committee. When she got to Juneau she sent him and email and said she did not want any of her constitutional rights and protections violated.

April 24, 2021 she received a letter from Jeremy Horn Director of Security saying she would hear back from them with her email input by May 23rd 2021 and said she could provide them more details, which she briefly did reiterating the uptight and harsh intentional treatment of Alaska Airline employees at the Juneau airport on April 22, 2021.

April 27, 2021 she asked Jeremy Horn to please explain where they allege she violated policy. She told him she wore the mask at TSA, in the boarding area and the entire flight. She explained how confrontational Alison was and the threat to cancel her ticket if she didn't pull the mask higher from Troy Michael Wuyts Smith. She had responded to Alaska Airlines there had been a negative encounter with Troy at a local grocery store that she reported to security the previous month. It is notable Senator Lora Reinbold was being filmed by Nona Dimond and the

ordeal being created made social media and media immediately. She said the flight attendants on the flight were kind and the pilots reflected well on the company.

April 30, 2021, Email from Jeremy Horn at 5:54 am thanked her for her replies then went on to talk about her lack of compliance and multiple reports of alleged combative interactions with employees. (She did not recall any combative interactions, only respectful inquiries). He said they require all their guests to wear masks in the interest of safety during Covid 19, it was their policy and federally mandated. Its ok not to wear mask during eating/drinking. The letter stated there were multiple occasions dating back several months and he claimed it lead to confrontations (She did not remember any confrontations, only respectful inquiries and she complied every time they asked, to the best of her recollection). He then says she was a (non specified) mask non-compliance incident on April 22, 2021. After careful consideration they maintained the ban during the entire time while the mask mandate was in place. She was not given a single warning nor a yellow card on the uneventful flight and had a peaceful flight. She may not have had her mask on the entire time at the state-owned airport, where she is a state senator-she does not believe Alaska Air has jurisdiction over the state building. In addition, she has legislative immunity coming and going from sessions according to the State of Alaska Constitution.

May 26, 2021 she was denied a ticket on Alaska Air, even after 30 day ban ended. She had another session to tend to in Juneau so this was quite stressful.[8]

Aug 6, 2021 she let Alaska Air know there was yet another 30 day special session in Juneau later that month. (Delta quits flying mid-September) and inquired if she were still banned. She said constitutionally she could not be held before any tribunal. She quoted members of the legislature attending, going to or returning from legislative session and not subject to civil process and are privileged from arrest except for felony or breach of the peace." She requested a list of all individuals that took part in banning a State Senator in the corporate decision. She requested to know what police power Alaska Air has to demand a facemask to be worn in state-owned buildings.

August 9, 2021 she got a letter from Kyle Levine-Legal and SVP General Council Corporate Secretary and Compliance officer in response to her letter to Jeremy on August 6th. Kyle said her flight privileges remain set out in the April 30, 2021 letter, for as long as a mask mandate remains in place for airports and aircraft.

Kyle stated the immunities apply to acts of a judicial or law enforcement authority and claimed Alaska Airlines is neither. He said a committee reviewed interactions with employees and decided to suspend my flight privileges for

---

[8] Ref 6449596 letter from Alaska Air dated May 26, 2021

reasons below and would not share their names. He cited SD 1542-21-O1A authorizes airport operators and airlines to enforce the mask requirement on the premises of airports obligated to maintain and aviation security program. Juneau International Airport is subject to the directive regardless of ownership by the state.

She talked to Juneau police officer Phelps in the Juneau airport and he had previously said there was a low dollar fine for not wearing a mask. In the past she had let him know it was worth it for her to pay the fine if he ticketed her. She did let him know she had a CDC mask exemption. But the Juneau airport is not state owned it is owned by the City of Juneau. The Anchorage airport is State owned.

She was able to get the videotapes from the Juneau Police Department from April 22, 2021.

## FIRST CAUSE OF ACTION

1. Because the DOT's Office of Aviation Consumer Protection finally informed all airlines on February 2, 2021, that they must grant face mask exceptions to qualified disabled people, that had a doctors finding that the person had a disability that made it unsafe for them to wear a Face Mask, the Defendants owed a duty to each of those persons with that disability to make them aware that the exemption for their disability would be accommodated.

13

2. Because each of the Defendants intentionally breached that duty to Lora Reinbold, and all of the Defendants persisted in intentionally forcing her to violate her rights under the United States Constitution and the Laws of the United States, including those under ADA, each of the Defendant's acts of negligence caused Senator Lora Reinbold to suffer intentional infliction of physical, mental and emotional distress.

SECOND CAUSE OF ACTION

The above cause of action in paragraph 1. And 2. Are incorporated herein as if restated herein word for word.


3. Because each of the Defendants knowingly continued to breach their duty to Lora Reinbold, that caused Lora Reinbold to be banned from flying on the Alaska Airlines Flights not for just the customary 30 days, but for a period of almost an entire year.


4. Because Lora Reinbold was an elected Alaska State Senator, Vice chaired Legislative Council and State Affairs and served on several other key committees, each of the Defendants intentional breach of their duty to Senator Lora Reinbold. They prevented Senator Lora Reinbold from flying to and from Juneau on the primary/monopoly commercial airlines, Alaska Airlines for

14

nearly a year, interfering with her elected duty to serve in each session and in each special session. The inability to fly on Alaska Air caused Senator Lora Reinbold to drive approximately 750 miles, on sometimes unmaintained roads, unpredictable and at times extremely dangerous (-40 below blizzard) weather conditions to Haines Alaska via Canada. In addition, she was required to catch a limited service 4-5 hour ferry to Juneau (there was only one ferry in January 2022) to perform her elected duty and be in the Capital of the State of Alaska to vote on behalf of her large constituency. The only other option to Juneau from Anchorage was to take a 3-4 day, unpredictable bi monthly Alaska State ferry to Bellingham Washington, drive to Seattle and take an alternate commercial airline to Anchorage. Senator Lora Reinbold repeatedly suffered intentional infliction of mental, emotional and physical stress from the ban and the incredible negative local, national and international media & social media attention. In addition the illegitimate ban on Alaska Airlines put the health and safety of her and her husband at risk due to the demanding long travel requirements in unpredictable and often harsh Northern climate weather conditions.

## THIRD CAUSE OF ACTION

The above cause of action in paragraph 1 through 4 Are incorporated herein as if restated herein word for word.

5. Because Lora Reinbold had been elected and served as a member of the legislature, served in the House of Representatives, and then had been elected as an Alaska State Senator, was voted to Chair of the Senate Judiciary, and served as an Alaska State Senator, until the Defendants used their positions to attempt to deprive her of her Constitutional and Statutory rights to perform her elected duty by banning her from flying on Alaska Airlines to and from Juneau for approximately a year, as long as there was still a mask mandate in place, each of the defendants were intentionally depriving Senator Lora Reinbold of her constitutional and statutory right to have access to flights of Alaska Airlines to fly to and from Juneau for most of a year, violating her constitutional and statutory rights intentionally.

6. Because each of the Defendants continued to intentionally breach their duty to Lora Reinbold, each of the Defendants caused her to suffer in her position as an Alaska State Senator, and caused strain as she was trying to perform her elected duty as an Alaska State Senator, and caused strain to relationships with staff, with her treasured constituents in both a personal and professional capacity, and to suffer from the strain placed on her that affected her relationships with her friends and family.

16

## FOURTH CAUSE OF ACTION

The above cause of action in paragraph 1 through 6 Are incorporated herein as if restated herein word for word.

7. Because the Defendants repeatedly made misleading statements and in some cases linked slanderous and defamatory information directed against Senator Lora Reinbold, and because of the way each of the Defendants reacted to her and the way they intentionally treated her, Senator Lora Reinbold suffered from the Defendants basically "raising their voices" against her, and in some incidences yelling at her to raise her mask further up on her nose, they were vindictively targeting her, attempting to intentionally provoke her, and/or cause her to suffer an intentional infliction of physical, mental and emotional stress and deny her constitutional rights.

8. The combined acts or actions of each of the named and unnamed Defendants has caused significant physical, psychological and emotional stress to Senator Lora Reinbold. The intentional infliction of emotional distress took such a heavy toll on her life. She concluded that she could not take such extreme risk to continue to serve by not having the ability to get to and from Juneau, even in an emergency if she was ever banned again because Alaska Airlines. This airline has a monopoly and is the only safe and efficient way to get to and from the state Capital during

17

legislative session. The nearly yearlong ban was so physically, psychologically and emotionally draining she could no longer risk her health and safety to continue serving her constituents, and due to numerous concerns related to the ban, was ultimately forced to give up her pursuits to be an elected official, as a result of the physical and emotional stress to her and her family and friends as a result of the intentional acts or actions by each of the Defendants, which has resulted in a substantial financial loss, defamation and damage to her and her family's plans for a future retirement.

## CONCLUSION

In conclusion, Lora Reinbold respectfully requests this court find that each of the named Defendants in this case intentionally inflicted the damages on the Plaintiff, and award actual damages in the amount of at least $500,000 from each of the named Defendants, and compensatory damages in the amount of at least $1,000,000 as to each of the named Defendants, and punitive damages of at least $5,000,000 as to each of the named Defendants because they knew that they were violating Senator Lora Reinbold's statutory and constitutional rights under the ADA, and each Defendant knowingly and intentionally violated the mandatory law directed to the each and every Airline, and violated her constitutional and statutory

18

rights under the constitution and laws of the United States and under the

Constitution and laws of the State of Alaska.

Dated this _____21_____ date of ___April___ 2023.

_Lora H. Reinbold_

Lora H. Reinbold, *pro se*