IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LORA H. REINBOLD,

                    Plaintiff,

         vs.

ALASKA AIRLINES, KYLE
LEVINE, *et al.*,

                    Defendants.

Case No. 3:23-cv-00087-JMK

**ORDER REGARDING PENDING
MOTIONS**

         Before the Court are two Motions to Dismiss.   At Docket 50, Defendants Kyle Levine, Jeremy Horn, Diana Birkett-Rakow, and Miroslava Frias (collectively "Specially Appearing Defendants") move the Court to quash Plaintiff Lora Reinbold's service of process and dismiss the claims against them for a lack of personal jurisdiction. At Docket 51, Defendants Alaska Airlines, Inc., Marilyn Romano, Troy Michael Wuyts Smith, Amber Allen, Alison Reineccius, Johnny R. Mann, Kristen Dilley, Brenda Baynard, and Dorothy Daniels (collectively "Alaska Airlines Defendants") move the Court to dismiss Ms. Reinbold's Second Amended Complaint for failure to state a claim.   Both motions are fully briefed.[1]   The Court took them under advisement without oral argument.

---

[1] Docket 52; Docket 53; Docket 55; Docket 56; Docket 57-1; Docket 57-2.

For the following reasons, both Specially Appearing Defendants' *Motion to Dismiss* and Alaska Airlines Defendants' *Motion to Dismiss* are **GRANTED**.

## I.  BACKGROUND

This dispute concerns former Alaska State Senator Lora Reinbold's approximately year-long ban from flying with Alaska Airlines.

After the COVID-19 pandemic began in early 2020, governments and private companies took action to mitigate the spread of the virus.  As relevant here, in April 2020, Alaska Airlines implemented a policy that required travelers on the airline to wear masks.[2] On January 21, 2021, former President Trump issued an Executive Order requiring that several federal agencies, including the Federal Aviation Administration and the Department of Homeland Security ("DHS"), take action "to require masks be worn in compliance with CDC guidelines in or on . . . airports, commercial aircraft," and other means of domestic transportation.[3]  The Transportation Security Administration ("TSA"), a component of DHS, then issued a Security Directive on January 31, 2021, that sought to implement the Executive Order and support enforcement of the Center for Disease Control's ("CDC") mask mandate.[4]  TSA's Security Directive required, subject to limited exceptions, that "an aircraft operator must not board any person who is not wearing a mask."[5]  Finally, on February 3, 2021, the CDC issued the Federal Transportation Mask

---

[2] Docket 49 at 10.
[3] Exec. Order No. 13,998, *Promoting COVID-19 Safety in Domestic and Int'l* Travel, 86 Fed. Reg. 7205 (January 21, 2021).
[4] Transp. Sec. Admin., SD 1544-21-02, SECURITY MEASURES—FACE MASK REQUIREMENTS, (2021).
[5] *Id.*

Mandate ("FTMM"), which generally required persons to "wear masks over the mouth and nose when traveling on any conveyance (e.g., airplanes, trains, subways, buses, taxis, rideshares, ferries, ships, trolleys, and cable cars) into or within the United States" and "at any transportation hub."[6] Thereafter, the Department of Transportation issued a notice regarding its policy for enforcing the FTMM, which specifically instructed the airlines how to implement the FTMM consistent with DOT requirements as to disability accommodations.[7]

Ms. Reinbold alleges that, against this regulatory backdrop, she took a number of flights on Alaska Airlines between November 2020 and April 2021.[8] She asserts that, on several of these flights, Alaska Airlines employees scrutinized whether she was appropriately masked in ways that made her feel singled out.[9] The airline's scrutiny of her masking came to a crescendo on April 22, 2021, when Ms. Reinbold flew on Alaska Airlines from Juneau to Anchorage.[10] Upon checking in with the airline, she inquired about accommodations for individuals whose doctors had provided them a written mask

---

[6] *Requirement for Persons to Wear Masks While on Conveyances & at Transportation Hubs*, 86 Fed. Reg. 8,025 (Feb. 3, 2021).

[7] Department of Transportation, NOTICE OF ENFORCEMENT POLICY: ACCOMMODATION BY CARRIERS OF PERSONS WITH DISABILITIES WHO ARE UNABLE TO WEAR OR SAFELY WEAR MASKS WHILE ON COMMERCIAL AIRCRAFT (Feb. 5, 2021).

[8] Docket 49 at 10–23.

[9] *See id.* at 10–13 (discussing a November 15, 2020, connecting flight before which Alaska Airlines staff inspected her mask prior to boarding following a complaint from another passenger and required her to wear a second mask); *id.* at 14–15 (discussing a December 1, 2020, flight before which Ms. Reinbold was allegedly monitored at the gate); *id.* at 15–16 (alleging that Alaska Airlines required Ms. Reinbold to wear a mask despite her "qualified mask exemption" on a January 15, 2020, flight); *id.* at 19–24 (discussing an April 22, 2021, incident).

[10] *Id.* at 19.

exemption and indicated that she had such an exemption.[11]   According to the Second Amended Complaint, an Alaska Airline employee informed her that the airline's policy was for an Alaska Airlines doctor to review exemptions before they would be granted.[12] Ms. Reinbold objected to review of her exemption because she believed that disclosing her medical information would violate federal health law.[13]   As a result, she alleges that Alaska Airlines employees insisted that she wear a face mask, required her to replace the face shield she had been wearing, and mistreated her prior to boarding.[14]

The next day, April 23, 2021, Ms. Reinbold received an email from Alaska Airlines notifying her that she had been banned from flying with the airline.[15] Furthermore, Ms. Reinbold's return flight to Juneau had been canceled, forcing her to drive to Juneau for the next legislative session.[16]   After she contacted a member of the airline's board, Ms. Reinbold was put in contact with the airline's Director of Security, who informed her that she had been banned for failure to comply with the mask mandate and combative interactions with Alaska Airlines staff.[17]   Ms. Reinbold insists that she wore a mask throughout the April 22, 2021, flight and was not warned about non-compliance during the flight.[18]   Nonetheless, Ms. Reinbold's ban from traveling with Alaska Airlines was only rescinded on April 18, 2022, after the mask mandate ended.[19]

---

[11] *Id.*
[12] *Id.* at 20.
[13] *Id.*
[14] *Id.* at 20–23.
[15] *Id.* at 24.
[16] *Id.* at 24, 28.
[17] *Id.* at 26–34.
[18] *Id.* at 34–35.
[19] *Id.* at 43.

Ultimately, Ms. Reinbold initiated this suit, alleging claims against Alaska Airlines and fifteen individuals.[20] She asserts that the Alaska Airlines ban and the incidents proceeding it resulted in difficulty traveling from her home in Eagle River to Juneau to attend the state's legislative session, negative media attention, and other injuries.[21]

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

A party may move to dismiss an action where a federal court lacks personal jurisdiction.[22] When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction is proper.[23] "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."[24] And the Court "resolves all disputed facts in favor of the plaintiff."[25]

Nonetheless, this standard "is not toothless."[26] "The party asserting jurisdiction 'cannot simply rest on the bare allegations of its complaint.'"[27] Thus, the court

---

[20] *See* Docket 1; Docket 49.
[21] Docket 49 at 39–43.
[22] Fed. R. Civ. P. 12(b)(2).
[23] *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).
[24] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).
[25] *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).
[26] *In re Boon Global Ltd.*, 923 F.3d at 650.
[27] *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

may consider declarations and other evidence to determine if personal jurisdiction exists.[28] At the motion to dismiss stage, "uncontroverted allegations must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."[29] On the other hand, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit."[30]

## B.     Motion to Dismiss for Failure to State a Claim

A party may move for dismissal when a plaintiff's complaint "fails to state a claim upon which relief can be granted."[31] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[32] Conclusory statements, unwarranted inferences, and "[t]hreadbare recitals of the elements of a cause of action" will not defeat dismissal; a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] In reviewing the motion to dismiss, the court construes all facts alleged in the complaint in the light most favorable to the plaintiff.[34] Dismissal for failure to state a claim is proper

---

[28] *See id.*
[29] *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800).
[30] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).
[31] Fed. R. Civ. P. 12(b)(6).
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).
[33] *Iqbal*, 556 U.S. at 678.
[34] *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)).

"if it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief."[35]

The court liberally construes the pleadings of *pro se* or self-represented litigants.[36] Nonetheless, a self-represented litigant's complaint must comply with the Federal Rules of Civil Procedure.[37]

## III. DISCUSSION

The Court addresses each motion to dismiss in turn.

### A. Specially Appearing Defendants' Motion to Dismiss

Specially Appearing Defendants move for a second time to quash Ms. Reinbold's purported service of a summons and to dismiss Ms. Reinbold's claims against them with prejudice. They argue that this Court lacks personal jurisdiction over them as they are citizens and residents of Washington who lack any significant contacts with Alaska.[38] In response, Ms. Reinbold insists that Specially Appearing Defendants have engaged in actions that connect them to Alaska.[39]

Two independent limitations restrict the territorial reach of courts: the long-arm statute of the state in which the court sits and the constitutional principles of due

---

[35] *Laborers' Int'l Union of N. Am., Loc. 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001)).

[36] *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010).

[37] *See Carter v. Commissioner of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986) (noting that *pro se* litigants are "expected to abide by the rules of the court in which [they] litigate[]").

[38] Docket 50 at 2.

[39] Docket 52 at 2.

process.[40] Alaska's long-arm statute, Alaska Stat. § 09.05.015, is co-extensive with federal due process requirements, so this Court's jurisdictional analyses under state law and federal constitutional law are the same.[41]

A court may exercise its personal jurisdiction over a non-resident defendant consistent with due process only if the defendant has "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."[42] "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," *i.e.*, there is general jurisdiction over the defendant, "a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim."[43]

### 1. No basis for general, personal jurisdiction exists over Specially Appearing Defendants

Specially Appearing Defendants assert that there is no basis for general jurisdiction, as they do not reside in Alaska.[44] Paradigmatically, a court may exercise general, personal jurisdiction over a defendant when they are domiciled in the forum, meaning they reside in the forum and intend to stay.[45] Here, none of Specially Appearing

---

[40] *See Schwarzenegger*, 374 F.3d at 800-01.

[41] *See Alaska Telecom, Inc. v. Schafer*, 888 P.2d 1296, 1299 (Alaska 1995) (holding that the Alaska legislature intended that Alaska Stat. § 09.05.015 be coextensive with the Fourteenth Amendment); *see also Schwarzenegger*, 374 F.3d at 801.

[42] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[43] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

[44] Docket 50 at 7–9.

[45] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Defendants are domiciled in Alaska.[46]  And Ms. Reinbold does not argue there is any other basis for the Court to conclude that their contacts in Alaska are substantial, continuous, and systematic.[47]

### 2. No basis for specific jurisdiction exists, as Specially Appearing Defendants did not purposefully direct their actions at Alaska

Specially Appearing Defendants next assert that there is no basis for specific jurisdiction.[48]  They argue that there is no suit-related conduct that connects them with Alaska as a forum and that the conduct of their employer may not be imputed to them for purposes of the jurisdictional analysis.[49]  Ms. Reinbold responds that her Second Amended Complaint specifies conduct that connects the defendants to Alaska.[50]

Courts within the Ninth Circuit analyze specific jurisdiction over non-resident defendants according to a three-part test:  (1) the non-resident must purposefully avail himself of the privilege of conducting business in the forum; (2) the claim must arise out of the forum-related activities; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."[51]  "The plaintiff has the burden of proving the first two prongs."[52]  "If [they do] so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable."[53]

---

[46] See Docket 20 at 2; Docket 21 at 2; Docket 27 at 2; Docket 28 at 2.
[47] See generally Docket 52.
[48] Docket 50 at 9–11.
[49] Id. at 10–11.
[50] Docket 52 at 2; Docket 57-2 at 2–4.
[51] In re Boon Global Ltd., 923 F.3d at 651 (quoting Schwarzenegger, 374 F.3d at 802).
[52] Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal citations omitted).
[53] Id. at 1212 (internal quotations and citations omitted).

Lora Reinbold v. Alaska Airlines et al.                                    Case No. 3:23-cv-00087-JMK
Order Regarding Pending Motions                                                                Page 9

Case 3:23-cv-00087-JMK   Document 59   Filed 02/12/24   Page 9 of 37

"The exact form of our jurisdictional inquiry depends on the nature of the claim at issue."[54]  Under the first part of the test, a purposeful availment test is used for claims sounding in contract and a purposeful direction test used for claims sounding in tort.[55]  Although Ms. Reinbold has asserted both contract and tort claims, her claims against Specially Appearing Defendants sound only in tort.[56]  Thus, the Court applies the purposeful direction test.

"Evidence of [purposeful] direction generally consists of action taking place outside the forum that is directed at the forum."[57]  In the Ninth Circuit, purposeful direction is analyzed under the *Calder* "effects" test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[58]  Under the third prong of this test, the plaintiff must show "something more" than mere harm in the forum— they must show the defendant's conduct was "expressly aimed" at the forum.[59]  The "[m]ere foreseeability" of effects in the forum is not enough.[60]

Ms. Reinbold alleges that the four Specially Appearing Defendants each played a role in her ban from Alaska Airlines, and her resulting injuries.  With respect to

---

[54] *Id.* at 1211.

[55] *Id.* at 1212.

[56] *See* Docket 49 at 44–101; *see City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("[C]laims brought pursuant to § 1983 sound in tort."); *see also Donelson v. Providence Health & Servs.-Washington,* 823 F. Supp. 2d 1179, 1191 (E.D. Wash. 2011) (noting ADA claims sound in tort).

[57] *Pebble Beach*, 453 F.3d at 1155.

[58] *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

[59] *Id.* at 1156.

[60] *Schwarzenegger*, 374 F.3d at 804–05.

Mr. Levine, Ms. Reinbold asserts that he emailed her on August 9, 2021, regarding the length of her ban from flying with Alaska Airlines.[61] Similarly, Ms. Reinbold alleges that Mr. Horn communicated with her regarding the ban.[62] Ms. Birkett-Rakow is one step further removed and is alleged to have communicated with Mr. Horn about Ms. Reinbold's ban.[63] And, finally, Ms. Reinbold alleges that Ms. Frias emailed her to inform her that she had been denied a ticket for a flight during her ban.[64]

In each instance, Specially Appearing Defendants took no action that was expressly aimed at Alaska as a forum. Ms. Reinbold argues that Specially Appearing Defendants engaged in a pattern of decision-making and communication that "establishes a direct and significant impact on the Plaintiff within the State of Alaska."[65] But, "[o]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[66] Thus, Specially Appearing Defendants' isolated communications with—or, in Ms. Birkett-Rakow's case, about— Ms. Reinbold, which were initiated outside Alaska, are not minimum contacts that support this Court's exercise of jurisdiction.[67]

---

[61] Docket 49 at 37–38.

[62] *Id.* at 26–31.

[63] *Id.* at 26–27.

[64] *Id.* at 36.

[65] Docket 57-2 at 3.

[66] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[67] *See Marcus v. Centers for Disease Control & Prevention*, No. 22:2-cv-02383-SSS-ASX, 2023 WL 3044614, at *7 (C.D. Cal. Feb. 21, 2023) (holding that a defendant's mailing of a letter revoking a plaintiff's PreCheck eligibility did not establish personal jurisdiction because the mailing occurred outside of the forum); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (holding that a defendant's mailing of email newsletters to individuals residing in California were too attenuated and isolated to support the exercise of jurisdiction).

Furthermore, "[a]n employee's contacts with a forum are not to be judged according to the employer's activities there; rather, each defendant's contacts with the forum state must be assessed individually."[68]  Therefore, although Alaska Airlines may have sufficient, suit-related contacts in Alaska such that the Court's exercise of personal jurisdiction is appropriate, those contacts may not be imputed to Specially Appearing Defendants, who are all sued in their individual capacities.  Ms. Reinbold's argument that Specially Appearing Defendants aimed conduct at Alaska because their acts were part of a "pattern of corporate decision-making and communication" thus fails.[69]  Ms. Reinbold's Second Amended Complaint does not allege that Specially Appearing Defendants made or influenced decisions within Alaska Airlines.  Instead, it asserts that Specially Appearing Defendants each initiated communications with or about Ms. Reinbold.  As discussed, these acts alone do not support jurisdiction.

Ms. Reinbold has not carried her burden to prove the first two prongs of the Ninth's Circuit test:  that Specially Appearing Defendants purposefully directed conduct at Alaska and that her claim arises from these forum-related activities.  Accordingly, Specially Appearing Defendants' Motion to Dismiss at Docket 50 is **GRANTED**.

## B.  Alaska Airlines Defendants' Motion to Dismiss

Next, Alaska Airlines Defendants move the Court to dismiss Ms. Reinbold's Second Amended Complaint because it fails to state a claim.  They methodically analyze

---

[68] *Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3 (N.D. Cal. Apr. 16, 2009) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir. 1989)).

[69] Docket 57-2 at 7.

each of Ms. Reinbold's sixteen causes of action and assert that her complaint cannot support each claim.[70]  Furthermore, they argue that Ms. Reinbold's complaint does not support the remedies she seeks.[71]  Ms. Reinbold responds that Alaska Airlines Defendants mischaracterize her behavior and that their arguments fail to address her specific allegations.[72]  As explained below, each of Ms. Reinbold's sixteen causes of action fails.

### 1. Ms. Reinbold's first claim duplicates other, better-pled claims

Alaska Airlines Defendants argue that Ms. Reinbold's first claim, styled as a claim for "violations of the duty of care concerning treatment of airline passengers with disabilities," fails because no such duty exists under state law.  Moreover, they contend that, insofar as Ms. Reinbold is seeking to enforce the FTMM, there is no private right of action that allows her to do so, and she lacks standing.[73]  Ms. Reinbold responds that Alaska Airlines Defendants fail to engage with her allegations that they denied her a reasonable accommodation, and thus disregarded their heightened duty of care as a common carrier.[74]

This Court construes the pleadings of self-represented litigants generously and affords Plaintiff the benefit of the doubt.[75]  In Ms. Reinbold's first cause of action, she alleges that Alaska Airlines Defendants denied her accommodations and illegitimately banned her from flying with the airline in violation of a duty of care.[76]  The Court

---

[70] Docket 51 at 15–42.
[71] *Id.* at 42–43.
[72] *See* Docket 53.
[73] Docket 51 at 15.
[74] Docket 53 at 5–6.
[75] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *accord Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).
[76] Docket 49 at 44–47.

understands Ms. Reinbold is seeking to assert a cause of action under state common law. Such a cause of action is properly stated as negligence, which Ms. Reinbold has separately asserted as her fifth cause of action.[77] Furthermore, insofar as Ms. Reinbold seeks to assert a claim for failure to accommodate her alleged disability under federal law, she does so in her second cause of action for violation of the Americans with Disabilities Act ("ADA"). Ms. Reinbold's first cause of action is duplicative of others in her complaint, which the Court addresses below, and does not state any independent grounds for relief. Therefore, the Court will rule out Ms. Reinbold's claim for "violations of the duty of care concerning treatment of airline passengers with disabilities" as **DISMISSED**, and address her allegations in its analysis of her second and fifth causes of action.

### 2. Ms. Reinbold's claims under the ADA and ACAA fail

Alaska Airlines Defendants next argue that Ms. Reinbold's ADA claim fails because neither airplanes, nor airport terminals, are "public accommodations" regulated by Title III of the ADA.[78] They further contend that no private cause of action exists under the Air Carrier Access Act ("ACAA").[79] In opposition, Ms. Reinbold does not press her ADA claim, but argues that the Ninth Circuit has left the door open for a private cause of action under the ACAA, and that other circuits recognize an implied cause of action under the ACAA.[80]

---

[77] *See id.* at 63–67.
[78] Docket 51 at 16–17.
[79] *Id.* at 17–18.
[80] Docket 53 at 6–7.

The ADA was enacted in part "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[81] The ADA contains three main sections—Title I, which concerns employment discrimination, 42 U.S.C. § 12111 *et seq.*; Title II, which governs access to public services, *id.* § 12131 *et seq.*; and Title III, which governs access to privately operated public accommodations, *id.* § 12181 *et seq.* Title III, which Ms. Reinbold invokes in this matter, prohibits discrimination in "any place of public accommodation," which includes certain, statutorily-enumerated private entities.[82] Although the statutory list enumerating "places of public accommodation" includes "a terminal, depot, or other station used for specified public transportation,"[83] the statute in turn defines "specified public transportation" as "transportation by bus, rail, or any other conveyance *(other than by aircraft)* that provides the general public with general or special service (including charter service) on a regular and continuing basis."[84] Given this definition, the Ninth Circuit has interpreted Title III not to cover airport terminals as places of public accommodation.[85] Moreover, aircraft themselves are not places of public accommodation under Title III.[86] Ms. Reinbold alleges that Alaska Airlines Defendants violated the ADA because they "den[ied] her reasonable accommodations while operating as a private entity offering public transportation."[87] This

---

[81] 42 U.S.C. § 12101(b)(1).
[82] *See* 42 U.S.C. § 12181(a) (prohibiting discrimination in public accommodations); *see also* 42 U.S.C. § 12181(7).
[83] 42 U.S.C. § 12181(7)(G).
[84] 42 U.S.C. § 12181(10) (emphasis added).
[85] *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1011 (9th Cir. 2013).
[86] *See Segalman v. Sw. Airlines*, 913 F. Supp. 2d 941, 946 (E.D. Cal. 2012), *vacated in part on other grounds sub nom. Segalman v. Sw. Airlines Co.*, 603 F. App'x 595 (9th Cir. 2015).
[87] Docket 49 at 47–48.

claim necessarily fails because the ADA does not govern access to airplanes or airport terminals, or require accommodations thereto.

Ms. Reinbold's claim under the ACAA, 49 U.S.C. § 41705, also fails because the Ninth Circuit has concluded that the ACAA does not create a private cause of action. The Ninth Circuit did not reach the question of whether the ACAA implied a private cause of action when it initially considered the question in *Gilstrap v. United Airlines, Inc.*, 709 F.3d 995, 1002 (9th Cir. 2013). However, it later expressly concluded that "Congress did not intend to create an implied private cause of action to remedy violations of the ACAA" in *Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1225 (9th Cir. 2018). Contrary to Ms. Reinbold's assertions, the Ninth Circuit has not left open the possibility of a private cause of action. Indeed, it explicitly foreclosed that possibility in *Segalman*. And, while other circuits have found the ACAA creates an implied cause of action, this Court is bound to apply Ninth Circuit case law. Thus, Ms. Reinbold may not maintain a suit under the ACAA.[88]

### 3.  Ms. Reinbold's §§ 1983, 1985, and 1986 claims are dismissed

Alaska Airlines Defendants further argue that Ms. Reinbold's claims under 42 U.S.C. § 1983 fail because neither airlines, nor their personnel, are state actors subject to suit under § 1983, and that their enforcement of the FTMM is not state action.[89]

---

[88]  In her sur-reply, Ms. Reinbold suggests that the Ninth Circuit's decision in *Segalman* "primarily addresses a mechanism for enforcement, not the applicability of the ACAA itself." Docket 57-1 at 6. She is correct on this point. The Court's decision here is simply that Ms. Reinbold may not seek to enforce the ACAA through this lawsuit as the statute does not create a private right of action.

[89]  Docket 51 at 19–23.

Furthermore, they insist that Ms. Reinbold's §§ 1985 and 1986 claims are unsustainable because she has not alleged a conspiracy, as required.[90]  For her part, Ms. Reinbold contends that Alaska Airlines Defendants were state actors for purposes of § 1983, as they enforced the Alaska mask mandate and coordinated with government officials to do so.[91] And she indicates "there appears to be a well-coordinated effort to deny plaintiff her rights to fly," suggesting a conspiracy exists.[92]

Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."[93]  "In order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'"[94]

Nonetheless, in some cases a private actor will be treated as a state actor for purposes of § 1983.  In the Ninth Circuit, courts analyze whether a private actor can be considered a state actor under a two-step framework.[95]  Courts "first ask whether the alleged constitutional violation was caused by the 'exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom

---

[90] *Id.* at 23–25.
[91] Docket 53 at 6–7.
[92] *Id.* at 8.
[93] 42 U.S.C. § 1983.
[94] *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)).
[95] *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023) (citing *Lugar,* 457 U.S. 922).

the State is responsible.'"[96]  "If the answer is yes, we then ask whether 'the party charged with the deprivation is a person who may fairly be said to be a state actor.'"[97]

At the second step of this analysis, the Court applies one of four tests to determine whether a private actor may be fairly said to be a state actor:  (1) the public function test; (2) the state compulsion test; (3) the nexus test; or (4) the joint action test.[98]

Alaska Airlines Defendants point out that Ms. Reinbold's complaint is specific that it concerns Alaska Airline's enforcement of federal, not state, policies.[99]  They are correct that Ms. Reinbold cannot allege a § 1983 cause of action based on these policies.[100]  But, because Ms. Reinbold is self-represented, this Court gives her the benefit of the doubt.  Since there also was a state-initiated mask mandate that may have provided a state-law opening for a § 1983 claim, this Court will consider whether such a claim is viable.

Ms. Reinbold invokes the nexus test and argues that extensive coordination between the airline and government officials in formulating the mask mandate renders the former a state actor for purposes of § 1983.[101]  The governmental nexus test examines "whether 'there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'"[102]

---

[96]  *Id.* (quoting *Lugar*, 457 U.S. at 937).
[97]  *Id.* (internal alterations omitted) (quoting *Lugar*, 457 U.S. at 937).
[98]  *Id.* at 1157.
[99]  *See* Docket 51 at 22 n.12.
[100]  *Morse v. North Coast Opportunities, Inc.,* 118 F.3d 1338, 1343 (9th Cir. 1997) ("[B]y its very terms, § 1983 precludes liability in federal government actors.").
[101]  Docket 53 at 7–8.
[102]  *Kirtley v. Rainey,* 326 F.3d 1088, 1095 (9th Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)).

Ms. Reinbold's conclusory assertion that "the discovery process will highlight extensive coordination between the airlines and government officials" is insufficient to demonstrate such a nexus. At the motion to dismiss stage, the Court looks to the allegations in the complaint, not unpled assertions which a plaintiff hopes to support in eventual discovery. Ms. Reinbold's Second Amended Complaint is devoid of any allegations that support a close nexus between the State of Alaska and Alaska Airline Defendants, as it focuses on their enforcement of federal policies.[103] Accordingly, her § 1983 claim is **DISMISSED**.

Additionally, Ms. Reinbold's §§ 1985 and 1986 claims must be dismissed as she has not pled allegations that allows this Court to infer the existence of a conspiracy. Section 1985 provides a cause of action for an individual injured by a conspiracy to interfere with civil rights.[104] Furthermore, Section 1986 provides a companion cause of action against individuals who know of a § 1985(3) conspiracy and "having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ."[105] To state a claim under § 1986, a plaintiff must also state a valid claim for relief under § 1985.[106]

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby

---

[103] *See generally* Docket 49.
[104] 42 U.S.C. § 1985.
[105] 42 U.S.C. § 1986.
[106] *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).

a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[107] To satisfy the first element, a plaintiff must show the existence of an agreement to deprive her of a protected right.[108] A "mere allegation of conspiracy without factual specificity is insufficient."[109] A plaintiff need not include allegations that show the existence of an express agreement, but they must plead conduct that allows the inference of a conspiracy.[110]

Here, Ms. Reinbold offers no allegations with factual specificity that support a conspiracy. She asserts that Alaska Airline Defendants' alleged acts to implement the FTMM and state mask mandate constituted a conspiracy.[111] These allegations are conclusory, and her Second Amended Complaint contains no other facts that support that any agreement existed between government actors and Alaska Airline Defendants to deprive her of a right.[112] In the absence of a valid conspiracy under § 1985, Ms. Reinbold's §§ 1985 and 1986 are **DISMISSED**.

### 4. Ms. Reinbold fails to state a defamation claim

Alaska Airline Defendants assert that Ms. Reinbold's claim for defamation is not viable, as her Second Amended Complaint fails to identify any specific defamatory statement, any instance where a statement was published to a third party, or any Alaska

---

[107] *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott,* 463 U.S. 825, 828–29 (1983).

[108] *See Scott v. Ross,* 140 F.3d 1275, 1284 (9th Cir. 1998).

[109] *Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 626 (9th Cir. 1988).

[110] *Scott,* 140 F.3d at 1284 (citing *Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311, 314 (9th Cir. 1983)).

[111] Docket 49 at 55–56 ("The defendants acted in the capacity of a state agent of the state [sic] and conspired overtly to deprive Lora's civil rights and equal protection rights.").

[112] *See generally* Docket 49.

Airline Defendant who published a statement.[113]  And they take issue with her "shotgun pleading," which they argue make numerous vague assertions.[114]  Ms. Reinbold responds in her affidavit and in exhibits that she identifies specific defamatory statements Alaska Airlines made to media outlets, which include examples of media coverage and social media posts that resulted from Alaska Airline Defendants' actions.[115]  In her view, "[s]tatements communicated by Alaska Airlines personnel can be deemed publication, [sic] to a third party when considering the wide dissemination of such statements to the media and published in social media in view of the public."[116]  And she asserts that "[m]ore will be revealed in the discovery process."[117]

   To state a claim of defamation under Alaska law, a plaintiff must plausibly allege:  "(1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) either per se actionability or special damages."[118]  Furthermore, because she was a public figure at the time of the alleged defamation, Ms. Reinbold must allege "actual malice."[119]  "Actual malice exists when it is proved that the defamatory statement was made with knowledge that it was false or with a reckless disregard of whether it was false or not."[120]

---

[113]  Docket 51 at 25–27.
[114]  *Id.* at 25–26.
[115]  Docket 53 at 9–10.
[116]  *Id.* at 10.
[117]  *Id.* at 9.
[118]  *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007).
[119]  *Id.* at 55.
[120]  *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1143 (Alaska 2007) (internal quotations omitted).

*Lora Reinbold v. Alaska Airlines et al.*  Case No. 3:23-cv-00087-JMK
Order Regarding Pending Motions  Page 21

Case 3:23-cv-00087-JMK   Document 59   Filed 02/12/24   Page 21 of 37

Ms. Reinbold's defamation claim fails because she does not identify any defamatory statement any defendant published to a third party. At the outset, the Court notes that it is not its duty to search Ms. Reinbold's complaint and exhibits for allegations that support her claims.[121] However, because Ms. Reinbold is self-represented and to ensure Ms. Reinbold's claims are examined on their merits, the Court reviewed Ms. Reinbold's Second Amended Complaint and her exhibits and cannot identify any statement Alaska Airline Defendants published to a third party. Social media posts and emails from individuals who are not defendants in this suit are not statements that support a defamation claim.[122] Nor are media accounts of her ban and conflict with Alaska Airlines.[123] The only statements that might be attributed to Alaska Airlines were those that appear in media articles from the company's spokesperson, indicating Ms. Reinbold was banned from flying with Alaska Airlines due to "her continued refusal to comply with employee instruction regarding the current mask policy."[124] But even these statements do not support a plausible claim for defamation, as Ms. Reinbold has not alleged that these statements were made with knowledge of falsity or reckless disregard. Finally, Ms. Reinbold suggests that defamatory statements will be unearthed in discovery. At the motion to dismiss stage, the Court does not consider what will or will not be discovered. Instead, it analyzes the sufficiency of the allegations in the complaint. Here, Ms. Reinbold

---

[121] *Cf. Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

[122] *See* Docket 49-3 (social media posts); Docket 49-6 (emails); Docket 49-21 (emails).

[123] *See* Docket 49-9.

[124] *Id.* at 2–3; *see also* Docket 49-18 (same); Docket 49-15 (containing a similar statement).

fails to adequately allege Alaska Airline Defendants made any defamatory statement and that these statements were made with actual malice. Ms. Reinbold's defamation claim is **DISMISSED**.

### 5. Ms. Reinbold does not sufficiently allege a negligence claim

Alaska Airline Defendants argue that Ms. Reinbold's negligence claims also are insufficiently pled.[125] With respect to the negligence per se claim, Alaska Airline Defendants highlight that Ms. Reinbold has failed to identify any law, regulation, or ordinance that Alaska Airline Defendants violated as required.[126] With respect to Ms. Reinbold's negligent hiring claim, Alaska Airline Defendants argue that there are no allegations that tie any individual Defendant to any hiring, training, or retention.[127] Further, Alaska Airline Defendants argue that a negligent hiring claim against Alaska Airlines is preempted by the ACAA and, failing that, there is no suggestion that Alaska Airlines as an employer should have known of the risk that the employees discussed in the Second Amended Complaint would have acted in the manner alleged.[128] Finally, with respect to Ms. Reinbold's negligent misrepresentation claim, Alaska Airline Defendants assert she has failed to allege that Alaska Airline Defendants failed to disclose a fact of consequence.[129] In response, Ms. Reinbold summarily asserts that "Rule 8 . . . does not

---

[125] *Docket 51 at 27–32.*
[126] *Id.* at 28.
[127] *Id.*
[128] *Id.* at 29–30.
[129] *Id.* at 31.

impose an obligation to address minute details at this pleading statement and therefor [sic] the defendants' claims should be denied."[130]

Although Rule 8 does not require a plaintiff provide "minute details" at the pleading stage, a complaint must contain enough facts that, if taken as true, would state a legal claim to relief that is "plausible on its face."[131] A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[132] In this case, Ms. Reinbold fails to plead factual content that allows a reasonable inference Alaska Airline Defendants are liable for negligence.

To state a claim for negligence per se, a plaintiff must allege a defendant "violated a law, regulation, or ordinance."[133] Ms. Reinbold alleges "[d]efendants had a clear duty and obligation to recognize and accommodate [her] disability, and act in line with all relevant laws and guidelines."[134] This does not identify any statute or regulation that was violated by Alaska Airline Defendants' alleged actions. Indeed, it is the type of conclusory assertion that the Supreme Court has warned cannot defeat dismissal.[135] Therefore, as a matter of law, she cannot maintain a claim for negligence per se.

Ms. Reinbold's theory of negligent hiring, training, or retention fares no better. "Alaska case law recognizes a cause of action for negligent hiring against an

---

130 Docket 53 at 11.
131 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).
132 *Iqbal*, 556 U.S. at 678.
133 *Blake v. Guthy-Renker, LLC*, 965 F. Supp. 2d 1076, 1082 (D. Alaska 2013).
134 Docket 49 at 63–64.
135 *Iqbal*, 556 U.S. at 678.

*employer* in certain situations."[136]  Ms. Reinbold's claim of negligent hiring fails insofar as it is alleged against the individual Defendants and Alaska law does not recognize a cause of action for negligent hiring against an employer's agent.[137]  This claim also fails against Alaska Airlines.  A negligent hiring claim seeks to impose liability on an employer for hiring an unfit employee and narrowly focuses on whether the employer should have known that hiring the employee created a particular risk and that particular risk then materialized.[138]  Ms. Reinbold does not allege that Alaska Airlines reasonably should have known that hiring employees named in this action could have caused injury.[139]  Moreover, a negligent training claim fails because Ms. Reinbold only makes the conclusory allegation that "Alaska Airlines engaged in negligence by failing to adequately train, or even inform, its employees, of their duties."[140]  As discussed, a plaintiff must pled factual content that allows the Court to infer a defendant is liable for the misconduct alleged.  Assertions without factual specificity are not enough.

Finally, Ms. Reinbold's claim of negligent misrepresentation is unsustainable.  Under Alaska law, a plaintiff must allege that a defendant failed to disclose a fact that they know may justifiably induce another to act or refrain from acting in a business transaction if they are under a duty to exercise reasonable care to disclose the

---

[136] *Cabales v. Morgan*, No. 3:14-CV-00161-JWS, 2015 WL 4720258, at *2 (D. Alaska Aug. 7, 2015) (emphasis in original).
[137] *Id.* at *2–3.
[138] *Cabales v. Morgan*, No. 3:14-CV-00161-JWS, 2015 WL 2449590, at *4 (D. Alaska May 22, 2015).
[139] *See* Docket 49 at 64–65.
[140] *Id.* at 65.

matter in question.[141]  Ms. Reinbold alleges that Alaska Airlines "failed to state on its website that a medical release had to be submitted days in advance."[142]  This assertion is insufficient to state a claim for negligent misrepresentation, as it does not contain any factual content that allows the Court to infer anything regarding Alaska Airlines Defendants' knowledge or if a duty to exercise reasonable care exists.  In view of the above, Ms. Reinbold's claim of negligence is **DISMISSED**.

### 6. Ms. Reinbold's remaining constitutional claims must be dismissed

In her sixth, tenth, fourteenth, and fifteenth causes of action, Ms. Reinbold asserts claims for violations of Article IV, Section 2, of the First Amendment; the Fifth Amendment; the Fourteenth Amendment; the Guarantees Clause of Article IV, Section 4; the Equal Protection Clause of the Fourteenth Amendment; and the constitutional right to travel.[143]  Alaska Airlines Defendants argue that these claims must be asserted as claims under § 1983 and that they may not be asserted against Alaska Airlines Defendants, as they are not state actors.[144]  Furthermore, they argue these claims each fail for independent reasons.[145]  Ms. Reinbold insists that Alaska Airlines Defendants acted as state actors.[146]

Section 1983 provides the mechanism for private enforcement of the substantive rights conferred by the United States Constitution and the Bill of Rights as there is no general right of action for constitutional violations.  As discussed above, § 1983

---

[141] *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1202 (Alaska 1998) (citing RESTATEMENT (SECOND) OF TORTS § 551 (1977)).
[142] Docket 49 at 65.
[143] *Id.* at 67–73, 80–83, 93–99.
[144] Docket 51 at 32.
[145] *Id.* at 32–35.
[146] Docket 53 at 6–7, 20–22.

claims may only be asserted against a state actor.[147] Having concluded that none of the Alaska Airlines Defendants in this action may be properly considered state actors for purposes of a § 1983 claim, the Court must dismiss Ms. Reinbold's remaining constitutional claims.[148]

### 7. Ms. Reinbold fails to state claims under 21 U.S.C. § 360bbb-3 and Alaska Stat. § 47.30.837

Alaska Airlines Defendants argue that Ms. Reinbold's claim for violation of her informed consent rights under 21 U.S.C. § 360bbb-3, a provision of the Federal Food, Drug, and Cosmetic Act commonly known as the Emergency Use Authorization Act, fails because the statute provides no right to sue.[149] Although Ms. Reinbold discusses the Emergency Use Authorization Act in her opposition, she does not directly address this argument.[150]

The Emergency Use Authorization Act does not provide a private right of action.[151] Therefore, Ms. Reinbold may not maintain a suit thereunder.

Ms. Reinbold also asserts a claim for violation of her informed consent rights under Alaska Stat. § 47.30.837. Although Alaska Airlines Defendants did not address this state law claim, this Court may act on its own initiative to dismiss a claim if the plaintiff

---

[147] *See, e.g.*, *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

[148] The Court notes that the factual predicate for these claims is the same as Ms. Reinbold's §§ 1983, 1985, and 1986 claims so no further analysis is needed to determine if Alaska Airlines Defendants acted as state actors.

[149] Docket 51 at 35.

[150] Docket 53 at 32–33.

[151] *See Kiss v. Best Buy Stores*, No. 3:22-CV-00281-SB, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (collecting cases).

"cannot possibility win relief under the statute they have urged."[152]  That is the case here.
Alaska Stat. § 47.30.837 defines the circumstances under which a patient has capacity to
give informed consent for purposes of Alaska Stat. § 47.30.836, which governs when a
facility may administer psychotropic medication.[153]  The circumstances described in
Ms. Reinbold's Second Amended Complaint have nothing to do with the administration of
such medication.

Accordingly, Ms. Reinbold's claims under these statutes are **DISMISSED**.

### 8.    Ms. Reinbold's contract claims are dismissed

In her eighth, ninth, and thirteenth causes of action, Ms. Reinbold alleges
breach of contract, "breach of contract arising from common carrier obligations," and
breach of the implied covenant of good faith and fair dealing.[154]  Alaska Airlines
Defendants argue that, although Ms. Reinbold need not plead the terms of the contract with
unusual specificity, her Second Amended Complaint fails to provide Alaska Airlines
Defendants notice of the term or terms of a contract which she believes entitle her to
relief.[155]  Furthermore, they contend that Ms. Reinbold's common law contract claims are
preempted by federal law.[156]  Ms. Reinbold responds that she cited the contract at issue in
her First Amended Complaint at Docket 30-1.[157]  And in her sur-reply, Ms. Reinbold argues

---

[152] *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981).
[153] *See* Alaska Stat. § 47.30.837.
[154] Docket 49 at 76–80, 91–93.
[155] Docket 51 at 36.
[156] *Id.* at 36–38.
[157] Docket 53 at 34.

that federal law preempts state law claims in a more narrow way than Alaska Airlines Defendants contest.[158]

Ms. Reinbold's breach of contract and breach of the implied duty of good faith and fair dealing must be dismissed, as she has failed to specify what contract terms were been breached or how the covenant of good faith was violated. Ms. Reinbold appears to assert that Alaska Airlines' cancellation of a ticket breached a "contract of carriage" and her MVP Gold Member Status.[159] But, these assertions alone do not allow the Court to conclude that Ms. Reinbold has properly alleged a contract claim. Although she points to her First Amended Complaint, this complaint is not the operative complaint at this stage as it has been superseded by her Second Amended Complaint. Furthermore, the Court reviewed the First Amended Complaint and could not identify any contractual term Ms. Reinbold claims Alaska Airlines Defendants breached. Rule 8 requires that "the plaintiff must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[160] Ms. Reinbold's Second Amended Complaint does not meet this standard because it does not specify any contract term or terms upon which the breach of contract and breach of implied covenant claims are based.

In any event, Ms. Reinbold's common law contract claims are preempted by the Airline Deregulation Act. The Airline Deregulation Act provides that an air carrier "may refuse to transport a passenger the carrier decides is, or might be, inimical to

---

[158] Docket 57-1 at 9–11.
[159] Docket 49 at 76–78.
[160] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

safety."[161]  Moreover, the Act generally preempts common law claims that relate to "rates, routes, or services."[162]  "A claim satisfies this requirement if it has 'a connection with, or reference to, airline' prices, routes, or services . . . ."[163]  The U.S. Supreme Court has concluded that breach of contract claims are preempted unless they "alleg[e] no violation of state-imposed obligations, but seek[] recovery solely for the airline's breach of its own, self-imposed obligations."[164]  Likewise, claims for breach of the implied covenant of good faith and fair dealing may be preempted if it is properly considered a "state imposed obligation" under the relevant state law.[165]  In *Northwest, Inc. v. Ginsberg*, the U.S. Supreme Court found that the implied covenant was a state-imposed obligation, and thus preempted, because it applies in all contract and cannot be disclaimed.[166]  So too in Alaska.[167]

   Ms. Reinbold does not identify a specific contractual provision for the Court to analyze.  However, any claim for breach of contract based on state-imposed obligations is preempted.  The core of Ms. Reinbold's claim, as the Court understands it, is that Alaska Airlines Defendants canceled a ticket after she was banned for an alleged failure to follow the FTMM.  Certainly, this claim is necessarily based in part on a state-imposed obligation

---

[161] 49 U.S.C. § 44902(a)(2).

[162] *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 282–84 (2014) (citing 49 U.S.C. 41713(b)(1)).

[163] *Id.* at 284 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

[164] *American Airlines v. Wolens*, 513 U.S. 219, 220 (1995).

[165] *See Northwest*, 572 U.S. at 286–88.

[166] *Id.*

[167] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014) (internal quotations and alterations omitted) ("Under Alaska's contract law, the covenant of good faith and fair dealing is implied in all contracts.").

as "the decision to implement the FTMM—a federally-imposed obligation—cannot be adjudicated without resort to outside sources of law."[168]  Furthermore, Ms. Reinbold's claim for breach of the implied covenant of good faith and fair dealing would be preempted because the covenant is itself a "state imposed obligation."  Accordingly, Ms. Reinbold's breach of contract claims and claim for breach of the implied covenant of good faith and fair dealing are **DISMISSED**.

### 9.    Ms. Reinbold's claim for intentional infliction of emotional distress fails

Alaska Airlines Defendants argue that Ms. Reinbold's claim for intentional infliction of emotional distress cannot proceed because she failed to plead any extreme and outrageous conduct or any facts that show severe emotional distress.[169]  Ms. Reinbold responds that the "the undeniable flood of hostile and hateful messages that [she received] . . . serves as irrefutable evidence of the defendants' extreme and outrageous conduct."[170] And she further argues that her Second Amended Complaint includes "[c]laims of substantial harm, displacement, psychological distress, and major inconvenience . . . ."[171]

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "that there was 'extreme and outrageous conduct' that intentionally or recklessly inflicted severe emotional distress."[172]  "[C]onduct gives rise to an IIED claim only if it is so outrageous in character, and so extreme in degree, as to go beyond all

---

[168] *Marcus v. Centers for Disease Control & Prevention*, No. 2:22-cv-02383-SSS-ASX, 2023 WL 3044614, at *10 (C.D. Cal. Feb. 21, 2023) (internal quotation and citation omitted).
[169] Docket 51 at 38–40.
[170] Docket 53 at 36.
[171] *Id.* at 37.
[172] *State v. Carpenter*, 171 P.3d 41, 58 (Alaska 2007).

possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[173] By contrast, "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities cannot form the basis of an IIED claim."[174] Even conduct that this "characterized by malice" is insufficient.[175]

In her Second Amended Complaint, Ms. Reinbold asserts that "[t]he Defendants' willful and repeated denial of necessary accommodations . . . exposed [her] to needless medical and safety risks" and that "[t]his conduct was extreme and outrageous since it appeared to be driven by an intent to subject me to public ridicule and humiliation . . . ."[176] These assertions, considered in the context of Ms. Reinbold's Second Amended Complaint, cannot be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[177] The Court disregards Ms. Reinbold's conclusory assertion that Alaska Airline Defendants' "conduct was extreme and outrageous since it appeared to be driven by an intent to subject me to public ridicule and humiliation . . . ."[178] Furthermore, the Court does not consider the "hostile and hateful messages" that Ms. Reinbold received, as they cannot be attributed to Alaska Airline Defendants.[179] Rather, the Court focuses on the factual core of Ms. Reinbold's claim—whether the conduct alleged was extreme. The alleged extreme conduct was Alaska Airline

---

[173] *Id.* (internal citations and quotations omitted).
[174] *Id.* (internal citations and quotations omitted).
[175] *Id.* (internal citations and quotations omitted).
[176] Docket 49 at 85.
[177] *Carpenter*, 171 P.3d at 58.
[178] Docket 49 at 85.
[179] Docket 53 at 36.

Defendants' denial of an accommodation related to Alaska Airlines' masking requirement. Ms. Reinbold concedes in her Second Amended Complaint that the alleged conduct occurred after she objected to providing Alaska Airline Defendants with her written exemption.[180] Given this context and the fact that Alaska Airline Defendants were legally obligated to enforce the FTMM, their conduct cannot be said to have been extreme. Ms. Reinbold's claim for intentional infliction of emotional distress therefore is **DISMISSED**.

### 10. Ms. Reinbold cannot assert a cause of action against Alaska Airline Defendants for invasion of privacy under the Alaska Constitution

Alaska Airline Defendants also argue that Ms. Reinbold's claim of invasion of privacy under the Alaska State Constitution must be dismissed because the constitutional provision does not apply to the actions of private parties.[181] Ms. Reinbold responds that she has a right to privacy under U.S. Supreme Court cases like *Roe v. Wade* and *Griswold v. Connecticut*.[182]

*First*, as this Court has explained, a plaintiff can vindicate their federal constitutional rights through a claim under § 1983, which must be asserted against a state actor. The U.S. Constitution and Bill of Rights do not themselves provide a cause of action. And, as the Court has already discussed, Alaska Airline Defendants in this case cannot be considered state actors.[183] As such, a claim of invasion of privacy premised on Ms. Reinbold's federal constitutional rights cannot survive.

---

[180] Docket 49 at 20.
[181] Docket 51 at 41.
[182] Docket 53 at 38–41.
[183] *See supra* at 26.

*Second*, a claim of invasion of privacy premised on Ms. Reinbold's state constitutional rights cannot be asserted against private parties.[184] In *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.3d 1123, 1130 (Alaska 1989), the Alaska Supreme Court declined to extend the constitutional right to privacy to prohibit action by private parties after determining that the parties had not established that the history of article I, section 22 of the Alaska Constitution demonstrated an intent to proscribe private action. Accordingly, Ms. Reinbold may not assert a claim for invasion of privacy under the Alaska Constitution against Alaska Airlines or its employees. Ms. Reinbold's invasion of privacy claim is **DISMISSED**.

### 11. Ms. Reinbold's asserted claim for violation of fiduciary responsibility to shareholders fails

Alaska Airline Defendants argue that Ms. Reinbold's asserted claim for violation of fiduciary responsibility to shareholders fails because Ms. Reinbold has not alleged that she owned stock in Alaska Airlines at a relevant time.[185] Ms. Reinbold does not directly respond.[186]

Ms. Reinbold's Second Amended Complaint does not specify the authority under which she assert this claim. However, under Alaska law, a shareholder generally "has no individual cause of action for injuries to his corporation."[187] Two exceptions to this rule apply: "(1) where the shareholder suffered an injury separate and distinct from

---

[184] *E.g., Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004).
[185] Docket 51 at 41–42.
[186] *Id.* at 42.
[187] *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197, 1199 (Alaska 1986).

that suffered by other shareholders, and (2) where there is a special duty, such as a contractual duty, between the alleged wrongdoer and the shareholder."[188] Ms. Reinbold has not alleged factual content that allows the Court to infer either exception applies and allows for a shareholder action here. Ms. Reinbold has not alleged that she is or was a shareholder in Alaska Airlines and thus may not maintain such a claim. Her claim for violation of fiduciary responsibility to shareholders is **DISMISSED**.

### 12. Declaratory relief is inappropriate

Ms. Reinbold seeks a request for a declaratory judgment stating that Alaska Airline Defendants "violated her guaranteed Constitutional rights, in addition to federal and state statutes identified and unidentified in this Amended Complaint."[189] As this Court has explained above, Ms. Reinbold fails to state a claim for violation of her constitutional rights or any federal or state statutes. And, as the Court will address, these claims may not be amended. There is no basis for declaratory relief.

### 13. The Court need not address the issue of punitive damages

Alaska Airline Defendants argue that Ms. Reinbold's request for punitive damages should be disallowed.[190] The availability of punitive damages and the standard for their application depends on the precise cause of action for which damages are awarded. Having concluded that each of Ms. Reinbold's claims must be dismissed, some with prejudice, the Court declines to address the issue of punitive damages at this stage.

---

[188] *Id.*
[189] Docket 49 at 104.
[190] Docket 53 at 43.

### 14. Many of Ms. Reinbold's claims must be dismissed with prejudice, as amendment would be futile

Finally, Alaska Airline Defendants request that this Court dismiss Ms. Reinbold's claims against them with prejudice because further amendment to Ms. Reinbold's complaint is futile. "[W]here amendment would be futile, a claim is properly dismissed with prejudice."[191]

Ms. Reinbold's claims under the ADA, ACAA, § 1983, the U.S. and Alaska Constitutions, and federal and state informed consent laws cannot be saved by amendment. These claims fail because they include no private cause of action or they may not be asserted against private parties like Alaska Airline Defendants. Furthermore, Ms. Reinbold's common law contract claims cannot be cured, as they are preempted. As such, Ms. Reinbold's second, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and fifteenth claims are **DISMISSED WITH PREJUDICE**. Furthermore, her § 1983 claim is **DISMISSED WITH PREJUDICE**.

Ms. Reinbold's remaining claims are **DISMISSED WITHOUT PREJUDICE**. The Court will not grant leave to amend at this time. If Ms. Reinbold wishes to amend these claims, she may do so under Federal Rule of Civil Procedure 15, *i.e.*, "only with the opposing party's written consent or the court's leave."[192] Ms. Reinbold may request leave to amend by motion. Upon a motion for leave to amend, the Court will consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated

---

[191] *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).
[192] Fed. R. Civ. P. 15(a)(2).

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc."[193]

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Specially Appearing Defendants' *Motion to Dismiss* at Docket 50 is **GRANTED**. Ms. Reinbold's claims against Kyle Levine, Jeremy Horn, Diana Birkett-Rakow, and Miroslava Frias are **DISMISSED WITH PREJUDICE**, as this Court lacks jurisdiction and for futility of amendment.

2. The Alaska Airlines Defendants' *Motion to Dismiss* at Docket 51 is GRANTED. Ms. Reinbold's remaining claims are **DISMISSED** as discussed above.

IT IS SO ORDERED this 12th day of February, 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[193] *Foman v. Davis*, 371 U.S. 178, 182 (1962).